1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   OTHELL MICHAEL WATKINS,

11          Petitioner,              No. CIV S-09-0558 KJM GGH P
          vs.
12

13   MIKE McDONALD, et al.,
                                     FINDINGS AND RECOMMENDATIONS
14          Respondent.
     _____/
15

16   I.  Introduction

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner was found guilty by a jury of attempted murder,

19   assault with a deadly weapon, inflicting corporal injury on a former cohabitant and grand theft.

20   He was sentenced to life with the possibility of parole plus five years.

21          Petitioner raises four claims in the instant petition: 1) ineffective assistance of

22   counsel; 2) the trial court erred in denying a request for a continuance; 3) the trial court erred by

23   denying petitioner's request to include a lesser included jury instruction; and 4) the trial court

24   erred with a jury instruction regarding reasonable doubt.

25          After carefully considering the record, the court recommends that the petition be

26   denied.

1  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

2  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked

3  substantial changes to the law of habeas corpus," establishing more deferential standards of

4  review to be used by a federal habeas court in assessing a state court's adjudication of a criminal

5  defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

6  1997).

7  In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

8  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

9  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

10 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

11 "unreasonable application of" that law. Id. at 1519.  "Contrary to" clearly established law applies

12 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

13 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

14 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

15 "Unreasonable application" of established law, on the other hand, applies to

16 mixed questions of law and fact, that is, the application of law to fact where there are no factually

17 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

18 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

19 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

20 deference is not blindly automatic, "the most important point is that an *unreasonable* application

21 of federal law is different from an incorrect application of law . . . [A] federal habeas court may

22 not issue the writ simply because that court concludes in its independent judgment that the

23 relevant state-court decision applied clearly established federal law erroneously or incorrectly.

24 Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120

25 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of

26 demonstrating the objectively unreasonable nature of the state court decision in light of

2

1   controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

2         "Clearly established" law is law that has been "squarely addressed" by the United

3   States Supreme Court.  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).

4   Thus, extrapolations of settled law to unique situations will not qualify as clearly established.

5   See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not

6   permitting state sponsored practices to inject bias into a criminal proceeding by compelling a

7   defendant to wear prison clothing or by unnecessary showing of uniformed guards does not

8   qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

9         The state courts need not have cited to federal authority, or even have indicated

10  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

11  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

12  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

13  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

14  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

15  established Supreme Court authority reviewed must be a pronouncement on constitutional

16  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

17  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

18        However, where the state courts have not addressed the constitutional issue in

19  dispute in any reasoned opinion, the federal court will independently review the record in

20  adjudication of that issue.  "Independent review of the record is not de novo review of the

21  constitutional issue, but rather, the only method by which we can determine whether a silent state

22  court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

23  2003).

24  ////

25  ////

26  ////

III. <u>Background</u>

        The California Court of Appeal set forth the following factual summary that the court adopts below.

        [Petitioner] and the victim, Melissa Melger, began dating in July 2005, ultimately living together for five or six months before Melger ended the relationship in September 2006.

        Over the two to three weeks following their break-up, [petitioner] sent approximately six e-mails to Melger expressing that he wanted to "get back with [Melger]." When Melger did not respond, [petitioner] called Melger's friend, asking where Melger was. Melger called [petitioner] and told him to stop calling her friends. Then she had her phone number "blocked."

        Melger nevertheless needed to retrieve her important documents and personal belongings still in [petitioner's] possession. Thus, via e-mail, [petitioner] told her to meet him at "his" apartment, number 720 at the Tamaron Ranch Apartments, in order to pick up her things. Apartment No. 720, however, was not [petitioner's] apartment, but it was at the "very back of the apartment complex" and it was vacant.

        On the morning of their scheduled meeting, Melger walked to [petitioner's] apartment complex. As she walked around looking for apartment No. 720, [petitioner] approached Melger from behind and put a blanket over her head, holding her with his arms wrapped around her chest.

        After "[a]bout two seconds," [petitioner] removed the blanket from Melger's head and she saw he had a butcher knife in the back of his pants. She also saw that [petitioner] was wearing "dark gray sweats[,] a light gray hooded sweatshirt," a "beanie" on his head with eye holes cut out and blue latex "hospital gloves." Melger asked [petitioner] what he was doing; "[h]e said nothing."

        Melger asked where her belongings were and [petitioner] pointed in "the opposite direction" from apartment No. 720. [Petitioner] began walking in that direction. As he was walking, [petitioner] asked Melger if she was alone, why she "hated him," and why she "didn't love him anymore." Melger said she was not alone, but did not answer his other questions; she simply asked where her things were and began following him.

        [Petitioner] continued walking but Melger turned back "to go on the path [she] came from." Then defendant grabbed Melger, stabbing her repeatedly while she screamed and tried to fight him off. [Petitioner] ran away, returning briefly to take Melger's purse and pick up his work vest and shoes before leaving the scene.

        Melger suffered multiple stab wounds but survived the attack. [petitioner] was subsequently arrested and charged with attempted murder, assault with a deadly weapon, corporal injury of a former cohabitant, and felony theft. [Petitioner] pled not guilty, but was convicted on all counts after a jury found him guilty as charged. The court sentenced [petitioner] to life in prison with the possibility of

4

1    parole, plus five years to be served consecutively.

2    People v. Watkins, 2008 WL 3412226 at *1-2.

3    IV.  Argument & Analysis

4    Claim 1–Ineffective Assistance of Counsel

5    Petitioner argues that trial counsel was ineffective for waiving the preliminary

6    hearing and counsel was not prepared for trial.

7    Legal Standard

8    The test for demonstrating ineffective assistance of counsel is set forth in

9    Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

10   that, considering all the circumstances, counsel's performance fell below an objective standard of

11   reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

12   identify the acts or omissions that are alleged not to have been the result of reasonable

13   professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine

14   whether in light of all the circumstances, the identified acts or omissions were outside the wide

15   range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that

16   counsel's conduct was within the wide range of reasonable assistance, and that he exercised

17   acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

18   695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

19   Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

20   693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for

21   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

22   694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

23   confidence in the outcome."  Id., 104 S. Ct. at 2068.

24   In extraordinary cases, ineffective assistance of counsel claims are evaluated

25   based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

26   1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland, supra,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Id., at 693, 104 S.Ct. 2052. Counsel's errors must be 'so serious'   as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S.Ct. 2052.
>
> 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly

1  deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521
2  U.S. 320, 333, n. 7, 117 S.Ct. 2059 (1997), and when the two apply
   in tandem, review is "doubly" so, Knowles, 556 U.S., at ___, 129
3  S.Ct. at 1420. The Strickland standard is a general one, so the
   range of reasonable applications is substantial. 556 U.S., at ___,
4  129 S.Ct. at 1420. Federal habeas courts must guard against the
   danger of equating unreasonableness under Strickland with
5  unreasonableness under § 2254(d). When § 2254(d) applies, the
   question is not whether counsel's actions were reasonable. The
   question is whether there is any reasonable argument that counsel
6  satisfied Strickland's deferential standard.

7  Harrington v. Richter, 131 S.Ct. 770, 787-788 (U.S. 2011); see also Premo v. Moore, 131 S.Ct.

8  733 (U.S. 2011) (discussing AEDPA review of ineffective assistance of counsel claim where

9  petitioner alleges that counsel was ineffective at the plea bargain stage).

10              Analysis

11          This claim was brought in a state habeas petition and summarily denied by the

12  California Supreme Court. If a state court denies constitutional claims without an explicated

13  decision, a federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no

14  basis other than the record for knowing whether the state court correctly identified the governing

15  legal principle or was extending the principle into a new context." Delgado v. Lewis, 223 F.3d

16  976, 981-82 (9th Cir. 2000). "While Supreme Court precedent is the only authority that is

17  controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for

18  purposes of determining whether a particular state court decision is an "unreasonable

19  application" of Supreme Court law.' " Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).

20  Thus, pursuant to Delgado, the Court must conduct an independent review of the record to

21  determine whether the state court's decision was objectively unreasonable. In Delgado, the Ninth

22  Circuit held that, "Federal habeas review is not de novo when the state court does not supply

23  reasoning for its decision, but an independent review of the record is required to determine

24  whether the state court clearly erred in its application of controlling federal law." 223 F.3d at

25  982.

26  ////

7

1    Petitioner alleges that by counsel waiving his right to a preliminary hearing,

2 petitioner missed an opportunity to be offered a plea and trial counsel was unable to learn about

3 the prosecution's case.  Other than these conclusory allegations petitioner provides no details.  It

4 is insufficient to conclude ineffective assistance of counsel, without any support.  Nor does

5 petitioner offer any facts that the prosecution was prepared to offer a plea, or waiving the

6 preliminary hearing led the prosecution to refuse to offer a plea.  Petitioner cannot show that the

7 state court opinion denying this claim was an unreasonable interpretation of Supreme Court

8 authority, i.e., Strickland.

9    Petitioner also alleges that a review of the trial transcript will reveal that trial

10 counsel was not prepared for trial.  However, petitioner offers no specific facts or examples of

11 counsel's alleged incompetence.  This general statement is insufficient, so this claim should be

12 denied.  See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which

13 are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James

14 v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

15    Ultimately, even assuming arguendo that trial counsel did err, petitioner has failed

16 to demonstrate any prejudice, therefore this entire claim should be denied.

17         Claim 2–Continuance

18    Petitioner argues that the trial court abused its discretion by denying his motion

19 for a continuance when the prosecution amended the complaint on the day trial was scheduled to

20 commence.

21         Legal Standard

22    Trial courts are accorded broad discretion on matters regarding continuances.  See

23 Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610 (1983).  However, there are cases holding

24 that a trial court's failure to grant a defendant a continuance may violate a defendant's right to

25 due process or other constitutional rights.  See, e.g., Armant v. Marquez, 772 F.2d 552, 556-58

26 (9th Cir. 1985) (Sixth Amendment right to self-representation).

8

1    Whatever the basis of the challenge, the denial of a continuance is reviewed for

2    abuse of discretion.  See Morris, 461 U.S. at 11-12 ("only an unreasonable and arbitrary

3    'insistence upon expeditiousness in the face of a justifiable request for delay' " violates a

4    defendant's rights); Armant, 772 F.2d at 556.  In Armant, the Ninth Circuit recited the four

5    factors used to determine whether the trial court abused its discretion in denying a requested

6    continuance: (1) the degree of diligence by the petitioner prior to seeking the continuance; (2)

7    whether the continuance would have served a useful purpose; (3) whether the continuance would

8    have inconvenienced the court or the prosecution; and (4) the amount of prejudice suffered by the

9    petitioner.  Id. at 556-57; see also, e.g., Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir.

10   1997).

11       Analysis

12       The court will again conduct an independent review of the record as this claim

13   was denied summarily on state habeas review.  Trial was scheduled for Monday, March 26, 2007,

14   and a trial readiness conference was held on Friday, March 23, 2007.  Reporter's Transcript (RT)

15   at 1-2.  Also on March 23, 2007, petitioner filed a request for a continuance to move the trial to

16   May 2007.  Clerks Transcript (CT) at 34-35.  Petitioner argued that the prosecution was filing an

17   amended information to add an enhancement of great bodily injury to the attempted murder

18   charge thereby increasing petitioner's maximum exposure in this case.[1]  CT at 35.  Petitioner

19   argued that he needed more time to evaluate the prosecution's expert witnesses and reports and

20   perhaps obtain a defense expert.  Id.  However, the prosecution noted that the great bodily injury

21   enhancement was already charged in a different count, related to the same victim and incident, so

22   petitioner was well aware of the need to prepare for this enhancement.  RT at 2.  Petitioner's trial

23   counsel conceded that the enhancement did not effect his preparedness for trial, but trial counsel

24   felt he needed more time to explain to petitioner what was happening.  RT at 2.  The prosecution

25

26       [1] The enhancement would add a potential five years.  RT at 2.

9

also noted he had told petitioner's counsel the week before of his intention to amend the

information and that due to a scheduling conflict the trial would need to be delayed about a week.

RT at 3.  The trial court stated the following:

> All right.  We did have an opportunity to discuss this matter in chambers.  I don't
> feel that there is sufficient cause for the Court to grant the request to continue the
> case.  I do feel that in relation to the amended information, Count 3, with my
> understanding involves the same victim also involves the same incident, already
> alleges that the [petitioner] personally inflicted great bodily injury.  So I don't feel
> that in and of itself is good cause to continue a trial since no additional discovery
> has been provided.  It's all basically the same facts.  It does add substantially to
> the potential sentence if [petitioner] is convicted, but I don't feel that in and of
> itself constitutes good cause.

RT at 4-5.

The trial began on April 9, 2007, when motions in limine were addressed and jury

voir dire did not begin until April 12, 2007.  RT at 15, 29.  Opening statements were heard on

April 17, 2007.  RT at 40.

Other than setting forth the basic facts of this claim, petitioner fails to describe

how he was prejudiced by the trial court's decision or how the denial of the continuance violated

due process.  As discussed above, the enhancement was already included in a separate count

involving the same victim and incident, so petitioner was on notice that the enhancement would

be presented at trial.  With respect to trial counsel's explanation that he needed more time to

explain the situation to petitioner, he was provided several more weeks until opening statement

were heard, which was more than enough time to speak with petitioner.  Looking at the factors

set forth by the Ninth Circuit in <u>Armant</u>, it is clear that there was no due process violation and

this claim is meritless and should be denied.

Claim 3–<u>Jury Instructions</u>

Petitioner contends that the trial court erred by refusing petitioner's request to

provide the jury with the instruction for attempted voluntary manslaughter and by failing to

instruct the jury regarding petitioner's physical disability in connection with the reasonable

person standard.

1    <u>Legal Standard</u>

2         It is well established that a criminal defendant generally is entitled to jury

3   instructions on the defense theory of the case, <u>see</u> <u>Conde v. Henry</u>, 198 F.3d 734, 739 (9th Cir.

4   1999); <u>United States v. Escobar de Bright</u>, 742 F.2d 1196 (9th Cir. 1984), and that the issue is

5   one of constitutional significance.  <u>Conde</u>, <u>supra</u>.  <u>See also</u> <u>Duckett v. Godinez</u>, 67 F.3d 734, 743

6   (9th Cir. 1995).   However, defendant is entitled to have the judge instruct the jury on his theory

7   of defense, *provided that it is supported by law and has some foundation in the evidence.*  <u>United</u>

8   <u>States v. Mason</u>, 902 F.2d 1434, 1438 (9th Cir. 1990).

9         <u>Analysis</u>

10        This claim was denied in a reasoned opinion by the state court.

11   [Petitioner] contends the trial court should have instructed the jury on attempted
     voluntary manslaughter.  Murder is the unlawful killing of a human being with
12   malice aforethought.  (§ 187, subd. (a); <u>People v. Manriquez</u> (2005) 37 Cal.4th
     547, 583.)  Voluntary manslaughter is the intentional but nonmalicious killing of a
13   human being.  (<u>People v. Manriquez</u>, supra, at p. 583; <u>People v. Benavides</u> (2005)
     35 Cal.4th 69, 102; <u>People v. Rios</u> (2000) 23 Cal.4th 450, 463 & fn. 10; § 192.)
14   Voluntary manslaughter is a lesser included offense of murder.  (<u>People v. Lee</u>
     (1999) 20 Cal.4th 47, 59; <u>People v. Manriquez</u>, supra, at p. 583.)  A killing may
15   be reduced from murder to voluntary manslaughter if it occurs upon a sudden
     quarrel or in the heat of passion on sufficient provocation, or if the defendant kills
16   in the unreasonable, but good faith, belief that deadly force is necessary in
     self-defense.  (<u>People v. Manriquez</u>, supra, at p. 583; <u>People v. Lee</u>, supra, at pp.
17   58-59.)  The provocation which incites the defendant to homicidal conduct must
     be caused by the victim or be conduct reasonably believed by the defendant to
18   have been engaged in by the victim.  (<u>People v. Manriquez</u>, supra, at p. 583.)

19   The trial court must instruct on a lesser included offense if substantial evidence
     exists indicating the defendant is guilty only of the lesser offense.  (<u>People v.</u>
20   <u>Manriquez</u>, supra, 37 Cal.4th at p. 584; People v. Cook (2006) 39 Cal.4th 566,
     596; <u>People v. Breverman</u> (1998) 19 Cal.4th 142, 162.)  Substantial evidence is
21   evidence from which a jury composed of reasonable persons could conclude the
     lesser offense, but not the greater, was committed.  (People v. Manriquez, supra,
22   at p. 584; <u>People v. Benavides</u>, supra, 35 Cal.4th at p. 102.)   In deciding whether
     there is substantial evidence of a lesser included offense, we do not evaluate the
23   credibility of the witnesses, a task for the jury.  (<u>People v. Manriquez</u>, supra, at p.
     585.)  We employ a de novo standard of review when determining whether a
24   lesser included offense instruction should have been given.  (<u>Id</u>. at p. 584; <u>People</u>
     <u>v. Waidla</u> (2000) 22 Cal.4th 690, 733.)

25
26   [Petitioner] contends that Melger's conduct in the two-week period preceding the
     assault was sufficient provocation.  [Petitioner] is wrong; nothing that Melger did

11

in the weeks between her break-up with [petitioner] and the assault could accurately be described as provocative.  She ignored his repeated pleas to revive the relationship and she asked him not to contact her friends.  Such conduct does not even approach provocation. (Cf. People v. Berry (1976) 18 Cal.3d 509, 514 [the victim, defendant's wife, "continually provoked defendant with sexual taunts and incitements, alternating acceptance and rejection of him.  This conduct was accompanied by repeated references to her involvement with another man"].)

Moreover, [petitioner] failed to show sufficient provocation on the day of the assault to warrant an instruction on attempted voluntary manslaughter.  (See People v. Kanawyer (2003) 113 Cal.App.4th 1233, 1247 [finding an instruction on voluntary manslaughter was not warranted when the record lacked "substantial evidence of *sufficient* provocation ... on the day of the murders"].)  (Original italics.)

Indeed, the evidence established that [petitioner] arrived at their meeting prepared to assault Melger.  He directed Melger to meet him at a vacant apartment at the back of the complex, wore a beanie with the eye holes cut out (it was not pulled over his face) and latex gloves, brought a butcher knife, and began the encounter by throwing a blanket over Melger's head.  Melger did little more than ask for her belongings before [petitioner] began stabbing her.

Accordingly, we conclude the trial court did not err in refusing [petitioner's] request to instruct the jury on attempted voluntary manslaughter.  FN2

FN2.  Because we find the court was not required to give [petitioner's] requested instruction on attempted voluntary manslaughter, we need not address [petitioner's] claim that the court erred in failing to give CALCRIM No. 3429, thus modifying the "reasonable person" requirement in voluntary manslaughter to that of a "reasonably disabled person."  (See People v. Mathews (1994) 25 Cal.App.4th 89, 99-100 [finding the court should give CALCRIM No. 3429 on request if the defendant has a physical disability and the crimes charged or lesser offenses include a reasonable person standard].)

People v. Watkins, 2008 WL 3412226 at *2-3

In the instant case, petitioner requested a jury instruction for attempted voluntary manslaughter.  RT at 213-14.  The trial court denied this request noting there was no evidence of provocation or heat of passion, to warrant this jury instruction.  RT at 214-15.  As set forth above, this claim was denied on appeal.

The facts of the instant case are similar to Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) where the Ninth Circuit denied habeas relief when the trial court declined to give a jury instruction of voluntary manslaughter at the defendant's request.  Here too, petitioner has failed to demonstrate a basis in the evidence which might require a proposed manslaughter

12

1  instruction.  There are no facts present that could even remotely point to the victim provoking

2  petitioner or anything that would provide for an attempted voluntary manslaughter instruction.

3  The state court set forth the relevant facts and as petitioner's claim is entirely meritless, the

4  undersigned need not again recite in detail how the victim was ambushed and stabbed while she

5  was just attempting to collect her belongings.

6            With respect to petitioner's argument that the trial court failed to instruct the jury

7  regarding petitioner's physical disability in connection with the reasonable person standard (as

8  that terms is used in manslaughter situations), petitioner provides no argument or details

9  concerning this claim or even what is his disability.  After reviewing petitioner's state court

10  appeals, it appears he's referring to the fact that he is hearing impaired which the state court

11  briefly addressed in their opinion in footnote 2 above.  Yet, petitioner provides no arguments

12  concerning how a hearing impaired individual should be entitled to a different reasonable person

13  standard based on the facts of the instant case.  Nor does the undersigned find that petitioner

14  should have been entitled to a different standard.  This is not a situation where petitioner's

15  disability had any impact during the incident.

16            Moreover, the state court found that this claim need not be addressed, as the trial

17  court did not err in refusing to give the attempted voluntary manslaughter charge and petitioner

18  has not shown this decision as contrary to Supreme Court authority.  Therefore, this claim should

19  be denied.

20            Claim 4–Jury Instructions

21            Finally, petitioner alleges that the trial court erred by instructing the jury on the

22  definition of reasonable doubt pursuant to CALCRIM 220.[2]

23  _____

24            [2] California Criminal Jury Instruction 220 states and the trial court instructed:
            The fact that a criminal charge has been filed against the defendant is not evidence that

25  the charge is true.  You must not be biased against the defendant just because he has been
   arrested, charged with a crime, or brought to trial.

26            A defendant in a criminal case is presumed to be innocent.  This presumption requires

13

1          <u>Legal Standard</u>

2          The Due Process Clause "protects the accused against conviction except upon

3  proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

4  charged." <u>In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct (1970).  The constitutional question posed

5  by a challenge to a reasonable doubt jury instruction "is whether there is a reasonable likelihood

6  that the jury understood the instructions to allow conviction based on proof insufficient to meet

7  the <u>Winship</u> standard." <u>Victor v. Nebraska</u>, 511 U.S. 1, 6, 114 S.Ct. 1239 (1994).

8          <u>Analysis</u>

9          This claim was also denied in a reasoned opinion by the state court:

10  B. CALCRIM No. 220
   [Petitioner] also contends the reasonable doubt instruction embodied in
11  CALCRIM No. 220, negates the presumption of innocence and impermissibly
   dilutes the prosecution's burden of proof.  Thus, the issue before us is " 'whether
12  there is a reasonable likelihood that the jury has applied the challenged instruction
   in a way' that violates the Constitution.  [Citation.]"  (<u>Estelle v. McGuire</u> (1991)
13  502 U.S. 62, 72 [116 L.Ed.2d 385]; <u>People v. Wade</u> (1995) 39 Cal.App.4th 1487,
   1493 [appellate court must consider whether a "reasonable juror would apply the
14  instruction in the manner suggested by defendant"].)  We conclude it did not.

15  CALCRIM No. 220 provides, in pertinent part, as follows: "A defendant in a
   criminal case is presumed to be innocent.  This presumption requires that the
16  People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you
   the People must prove something, I mean they must prove it beyond a reasonable
17  doubt....

18  "Proof beyond a reasonable doubt is proof that leaves you with an abiding
   conviction that the charge is true.  The evidence need not eliminate all possible
19  doubt because everything in life is open to some possible or imaginary doubt.

20  "In deciding whether the People have proved their case beyond a reasonable

21  _____

   that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the
22  People must prove something, I mean they must prove it beyond a reasonable doubt.
          Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that
23  the charge is true.  The evidence need not eliminate all possible doubt because everything in life
   is open to some possible or imaginary doubt.
24          In deciding whether the People have proved their case beyond a reasonable doubt, you
   must impartially compare, consider all the evidence that was received throughout the entire trial.
25          Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled
   to an acquittal and you must find him not guilty.  RT at 224-25.
26

doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, (he/she/they) (is/are) entitled to an acquittal and you must find (him/her/them) not guilty."

[Petitioner] contends that requiring the jury to "impartially compare and consider all the evidence" undermined the presumption of innocence and supplanted it with a lesser standard of impartiality.  [Petitioner] urges the phrase "impartially compare" implies a weighing of two opposed sets of evidence, thus imparting to the jury "the incorrect idea of comparing two sets of evidence" such that the prosecution would meet its burden if defendant failed to produce enough evidence on his side of the scale to outweigh the evidence against him.  (Coffin v. United States (1895) 156 U.S. 432, 453 [39 L.Ed. 481, 491].)  [Petitioner] also objects to inclusion of language requiring an "abiding conviction" without any additional reference to the gravity or weight of proof required.  Similar arguments were recently rejected in People v. Stone (2008) 160 Cal.App.4th 323 (Stone), with which we agree.

1. " Compare and Consider "
In Stone, the defendant argued that the phrase " 'impartially compare and consider all the evidence' renders the instruction constitutionally infirm because it connotes the civil, preponderance standard of proof by implying 'a weighing of *two* opposed sets of evidence-the proverbial balancing of the scales.' " (Stone, 160 Cal.App.4th at pp. 330-331, original italics.)  The appellate court found the defendant's "exercise in semantics" not to be persuasive, concluding that "a jury instruction cannot be judged on the basis of one or two phrases plucked out of context: Rather, ' " ' " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction....' " ' " ' "  (People v. Young (2005) 34 Cal.4th 1149, 1202 [citations omitted]; see People v. Smithey (1999) 20 Cal.4th 936, 963 [same]."  (Stone, at p. 331.)

As in Stone, "we cannot see how a jury would place enough significance on a single word– 'compare' –such that it would interpret the instruction as a whole to mean that the evidence must only preponderate in favor of the prosecution in order to warrant a guilty verdict.  The instruction simply tells the jury to 'compare and consider *all the evidence* that was received throughout the entire trial.'  It does not instruct the jury to engage in any balancing of the evidence in the sense of comparing the evidence presented by one side against the evidence presented by the other side."  (Stone, supra, 160 Cal.App.4th at p. 332, original italics.)

Here, as in Stone, the court also instructed the jury that the "fact that a criminal charge has been filed against the [petitioner] is not evidence that the charge is true," the [petitioner] is presumed innocent, and the [petitioner] has an absolute constitutional right to testify.  (Stone, supra, 160 Cal.App.4th at p. 332.)  And in closing argument, counsel for the prosecution and the defense, collectively, mentioned the "beyond a reasonable doubt standard" no less than 12 times.

After reading the instructions as a whole, and considering counsels' repeated references to the "beyond a reasonable doubt" standard, "we are convinced that there is no likelihood whatsoever that the jury could have interpreted the 'compare

15

and contrast' language in the instruction in the manner suggested by defendant." (<u>Stone</u>, supra, 160 Cal.App.4th at p. 332.)

2. "Abiding Conviction"
The defendant in <u>Stone</u> also challenged the constitutionality of the phrase: "proof that leaves you with an abiding conviction that the charge is true," making the exact same argument made by defendant here.  (<u>Stone</u>, supra, 160 Cal.App.4th at p. 330.)  Specifically, the defendant in <u>Stone</u> argued the phrase "renders the burden of proof instruction constitutionally infirm because it conflates the separate concepts of duration and weight.  As [petitioner] states it: 'The phrase "abiding conviction" conveys the idea of a determination that will last, but it cannot convey the idea of a conviction based [on] weighty evidence.  The concept of proof beyond a reasonable doubt embodies the requirement of gravity of proof, not simply a decision that is lasting.' "  (<u>Id</u>. at p. 332, italics omitted.)

The court noted that the "abiding conviction" language had previously appeared in the predecessor to CALCRIM No. 220, CALJIC No. 2.90.  It concluded upon reviewing the relevant discussion in <u>Victor v. Nebraska</u> (1994) 511 U.S. 1 [127 L.Ed.2d 583] (<u>Victor</u>), and <u>People v. Freeman</u> (1994) 8 Cal.4th 450 (<u>Freeman</u>), that the "abiding conviction" language in CALCRIM No. 220 "can be traced directly to the instruction approved in <u>Freeman</u>, in which the Supreme Court explicitly sanctioned language defining reasonable doubt as ' "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." ' [Citations.]" (<u>Stone</u>, supra, 160 Cal.App.4th at p. 334.)  The court continued:

"Moreover, the concept of an 'abiding conviction' was also given a stamp of approval in <u>Victor v. Nebraska</u> where the high court stated: 'Although in this respect moral certainty is ambiguous in the abstract, the rest of the instruction ... lends content to the phrase.  The jurors were told that they must have " an abiding conviction, to a moral certainty, of the truth of the charge." ...  An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof. [Citations.]'  (<u>Victor v. Nebraska</u>, supra, 511 U.S. at pp. 14-15 [127 L.Ed.2d at pp. 595-597], italics added.)  Furthermore, numerous California cases since <u>Freeman</u> have rejected due process challenges mounted against the criminal burden of proof instruction with its 'abiding conviction' language. [Citations.]"  (<u>Stone</u>, supra, 160 Cal.App.4th at p. 334.)

The court then noted that the appellate court in <u>People v. Haynes</u> (1998) 61 Cal.App.4th 1282, "rejected substantially the same due process argument made by defendant in this case-that the term 'abiding conviction' is 'a standard for "duration" but not the "degree of certitude" jurors must have.'  (<u>Id</u>. at p. 1299.)" (<u>Stone</u>, supra, 160 Cal.App.4th at p. 334.)

Having carefully considered [petitioner's] claims, we conclude CALCRIM No. 220 accurately states the law.  That, coupled with the fact that both counsel repeatedly explained the appropriate burden of proof and the court adequately instructed the jury as to that burden, we conclude it is not reasonably likely the jury misapplied the instruction in CALCRIM No. 220.  We reject [petitioner's]

1     claim that the instruction negates the presumption of innocence and lessens the
2     burden of proof.

3     People v. Watkins, 2008 WL 3412226 at *3-6.

4          Petitioner alleges that CALCRIM 220, by using the words "compare and
5     consider" and "abiding conviction" provides the jury with a standard that is less than beyond a
6     reasonable doubt.  As set forth in the state court's detailed opinion, this argument has failed to
7     sway California courts.  Petitioner's interpretation that the use of the word "compare" would
8     confuse a jury into believing that the prosecution only has to prove its case by a preponderance of
9     the evidence is meritless, as is his argument concerning "abiding conviction."  The jury
10    instruction is quite clear and explicit that the prosecution must prove its case beyond a reasonable
11    doubt, and the instruction refers to proof beyond a reasonable doubt five times.

12         Petitioner will not be entitled to habeas relief simply by taking words out of the
13    instruction and then arguing that those few words out of context could confuse a jury.  Nor is
14    there a reasonable likelihood that the jury misunderstood the jury instruction and found petitioner
15    guilty based on a standard less then beyond a reasonable doubt.  Petitioner has failed to show this
16    instruction is contrary to established Supreme Court authority and as the state court stated, the
17    words "abiding conviction" were upheld by the Supreme Court on review in Victor v. Nebraska,
18    511 U.S. 1, 14-15, 114 S.Ct. 1239 (1994).  Petitioner's claim should be denied.

19         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
20    a writ of habeas corpus be denied.

21         If petitioner files objections, he shall also address if a certificate of appealability
22    should issue and, if so, as to which issues.  A certificate of appealability may issue under 28
23    U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a
24    constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate
25    which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).
26    ////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2011

 /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

ggh: ab
watk0558.hc

18